**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| TAIS NARA DE OLIVEIRA FRANCA QUINUPE and AYLA LIZ QUINUPE FRANCA,<br><br>Petitioners,<br><br>v.<br><br>PATRICIA HYDE, Field Office Director, TODD LYONS, Acting Director U.S. Immigrations and Customs Enforcement, and KRISTI NOEM, U.S. Secretary of Homeland Security; PAMELA BONDI, U.S. Attorney General EXECUTIVE OFFICE OF IMMIGRATION REVIEW,<br><br>Respondents. | Civil Action No. 25-cv-12981-GAO |

**RESPONDENTS' RESPONSE TO HABEAS PETITION**

Respondents, by and through their attorney, Leah B. Foley, United States Attorney for the District of Massachusetts, respectfully submit this opposition to the Petition for Writ of Habeas Corpus filed by Petitioner Tais Nara De Oliveira Franca Quinupe on behalf of herself and her minor daughter, Ayla Liz Quinupe Franca (collectively, "Petitioners"). Doc. 1 ("Petition"). Respondents respond to the Petition as contemplated by Rules 4 and 5 of the Federal Rules Governing Section 2254 cases.[1]

This Court cannot extend the writ of habeas corpus unless an individual demonstrates that she "is in custody in violation of the Constitution or laws or treaties of the United States". 28

[1] *See* Rule 1(b) ("The district court may apply any or all of these rules to a habeas corpus petition…"); *Vieira v. Moniz*, No. CV 19-12577-PBS, 2020 WL 488552, at *1 n.1 (D. Mass. Jan. 30, 2020) (evaluating the Government's response and dismissing habeas petition under Section 2254 Rules).

U.S.C. § 2241(c)(3). Petitioners cannot satisfy their burden here. Contrary to Petitioners' assertions in their Petition, they are not detained pursuant to 8 U.S.C. § 1225. *See* Doc. 8 at pp. 4-5. In fact, Petitioners are not detained at all.[2] *See* Declaration of Keith Chan ("Decl."), Assistant Field Office Director, Immigration and Customs Enforcement ("ICE"), at ¶ 5. Instead, Petitioners are subject to an administratively final order of removal that was issued by an Immigration Judge, and Petitioners appear to be utilizing the instant Petition as a mechanism by which to stay their removal. *See* Doc. 1, p. 4 (asking the Court to "[d]eclare that Petitioner's future detention or removal is unlawful"). This is not permissible.

This Court lacks jurisdiction to interfere with ICE's removal of Petitioners pursuant to 8 U.S.C. § 1252(g), which bars district court review of any "decision or action by [ICE] to…execute removal orders." *Compere v. Riordan*, 368 F. Supp. 3d 164, 171 (D. Mass. 2019) (explaining that because petitioner is "subject to a final order of removal and he seeks to enjoin ICE from enforcing that order…[h]is claim for injunctive relief falls, therefore, directly within the jurisdictional bar set by Congress"). Even though Petitioner Tais Nara De Oliveira Franca Quinupe claims she recently filed an application for a T visa with U.S. Citizenship and Immigration Services ("USCIS"), this does not change the analysis. Courts have routinely found that the filing of an application for a T visa, without more, does not operate as a bar to removal, and, relatedly, the federal regulation applicable here specifically states that the filing of an application for a T visa has "no effect on [Department of Homeland Security] authority or discretion to execute a final order of removal." *See* 8 C.F.R. § 214.204(b)(2)(i).

[2] As described more fully below, Petitioner Tais Nara De Oliveira Franca Quinupe was enrolled in the Alternatives to Detention program and was given a GPS monitor after she was ordered removed by the Immigration Court. That said, Petitioner does not appear to be challenging the GPS monitoring in this Petition. *See generally* Docs. 1 and 8.

For these reasons, and as described more fully below, the Petition should be denied.

**FACTUAL AND PROCEDURAL BACKGROUND**

Petitioners are citizens and nationals of Brazil. *See* Decl. ¶ 6. On or around July 10, 2010, Border Patrol agents in Yuma, Arizona encountered Petitioners. Decl. ¶ 7. During this encounter Petitioner Tais Nara De Oliveira Franca Quinupe admitted that she and her daughter were in the United States illegally. Decl. ¶ 7. After determining that Petitioners were not inspected, admitted, or paroled by an immigration officer at the time of entry and that Petitioners did not have a valid immigration visa, reentry permit, border crossing card, or other valid entry document, Border Patrol detained Petitioners and transported them to the Yuma Border Patrol Station for further processing. Decl. ¶ 8.

On or around July 14, 2021, Border Patrol issued and served Petitioners with Notices to Appear, charging them with inadmissibility under 8 U.S.C. § 1182(a)(6)(A)(i). Decl. ¶ 9. On or around July 17, 2021, Petitioners were released on their own recognizance. Decl. ¶ 10. On or around August 9, 2021, Border Patrol filed the Notices to Appear with the Immigration Court in Boston, Massachusetts, and initiated removal proceedings against Petitioners. Decl. ¶ 11.

While in removal proceedings the Immigration Court found Petitioners to be removable pursuant to the charge contained in the Notices to Appear and found that Petitioners did not merit any relief against removal. Decl. ¶ 12.

On or about April 15, 2025, the Immigration Court entered an order of removal against Petitioners. Decl. ¶ 12. Petitioners appealed the Immigration Court's decision to the Board of Immigration Appeals ("BIA"). Decl. ¶ 12. On or about April 23, 2025, ICE enrolled Petitioner Tais Nara De Oliveira Franca Quinupe in the Alternative to Detention Program and outfitted her

with a GPS tracker. Decl. ¶ 13. On September 15, 2025, the BIA dismissed Petitioners' appeal. Decl. ¶ 14. Petitioners are subject to a final administrative order of removal. Decl. ¶ 15.

On or around October 9, 2025, ICE ordered Petitioners to report to ICE for an office visit. Decl. ¶ 16. Petitioners did not report to the office. Decl. ¶ 16.

ICE instructed Petitioners to depart the United States pursuant to their administratively final orders of removal on or before October 12, 2025. Decl. ¶ 16. Petitioners did not depart the United States. Decl. ¶ 16. Petitioners are not presently detained. Decl. ¶ 18.

As of today's date, there are no pending motions to reopen with the Immigration Court or the BIA. Decl. ¶ 19.

## STANDARD OF REVIEW

It is axiomatic that "[t]he district courts of the United States . . . are courts of limited jurisdiction. They possess only that power authorized by Constitution and statute." *Exxon Mobil Corp. v. Allopath Servs., Inc.*, 545 U.S. 546, 552 (2005) (internal quotations omitted). Title 28 U.S.C. § 2241 provides district courts with jurisdiction to hear federal habeas petitions unless Congress had separately stripped the court of jurisdiction to hear the claim. To warrant a grant of writ of habeas corpus, the burden is on the petitioner to prove that his custody is in violation of the Constitution, laws, or treatises of the United States. *See* 28 U.S.C. § 2241(c)(3); *Espinoza v. Sabol*, 558 F.3d 83, 89 (1st Cir. 2009) ("The burden of proof of showing deprivation of rights leading to an unlawful detention is on the petitioner.").

## ARGUMENT

### A. This Court Lacks Jurisdiction To Stay Petitioners' Removal From The United States.

Petitioners ask this Court to issue an order preventing Respondents from removing them. *See* Doc. 8, p. 6 at (4). But this Court is without jurisdiction to offer such relief as 8 U.S.C. §

1252(g) precludes a district court from staying orders removal. Section 1252(g) states that "no court shall have jurisdiction to hear any cause or claim by ... any alien arising from the decision or action by [ICE] to ... *execute removal orders against any alien*." (emphasis added). This provision applies "notwithstanding any other provision of law (statutory or nonstatutory), including section 2241 of Title 28, or any other habeas corpus provision, and sections 1361 and 1651 of such title." *Id.*

Courts within this district and around the country routinely hold that they lack jurisdiction to enter an order staying removal based on section 1252(g)'s plain language. *See e.g., Tejada v. Cabral,* 424 F. Supp. 2d 296, 298 (D. Mass. 2006) ("Congress made it quite clear that all court orders regarding alien removal—be they stays or permanent injunctions—were to be issued by the appropriate courts of appeals."); *Aziz v. Chadbourne*, No. CIV.A.07-11806-GAO, 2007 WL 3024010, at *1 (D. Mass. Oct. 15, 2007) ("[a]ny stay of the final order of removal would squarely interfere with the execution of the removal order."); *Martin v. U.S. Immigration & Customs Enf't,* No. CIV.A. 13-11329-DJC, 2013 WL 3282862, at *3 (D. Mass. June 26, 2013) ("this Court lacks authority to issue a stay of a final order of removal."); *Nelson v. Hodgson*, No. CIV.A. 14-10234-DJC, 2014 WL 2207621, at *2 (D. Mass. May 27, 2014) (the "provisions of the REAL ID Act preclude this court from entering an order staying petitioner's removal."); *Doe v. Smith*, No. CV 18-11363-FDS, 2018 WL 4696748, at *3 (D. Mass. Oct. 1, 2018) (same); *Compere v. Riordan*, 368 F. Supp. 3d 164, 170 (D. Mass. 2019) (same); *Lopez Lopez v. Charles*, No. 12-CV-101445-DJC, 2020 WL 419598, at *4 (D. Mass. Jan. 26, 2020) (same).

Section 1252(g) is "directed against a particular evil: attempts to impose judicial constraints upon [certain categories of] prosecutorial discretion." *Reno v. Am.-Arab Anti-Discrimination Comm.*, 525 U.S. 471, 485 n.9 (1999). Indeed, Petitioner's "requested relief, a stay

from removal, would necessarily impose a judicial constraint on immigration authorities' decision to execute the removal order, contrary to the purpose of § 1252(g)." *Viana v. President of United States*, No. 18-CV-222-LM, 2018 WL 1587474, at *2 (D.N.H. Apr. 2, 2018), *aff'd sub nom. Viana v. Trump*, No. 18-1276, 2018 WL 11450369 (1st Cir. June 18, 2018).

The fact that Petitioners are seeking a stay of removal while USCIS adjudicates Tais Nara De Oliveira Franca Quinupe's T visa application does not change the analysis; section 1252(g) still bars jurisdiction for this Court to order a stay. *See Arely Westley a/k/a Wilson Amilcar Velasquez-Cabellero v. Harper, et al.,* No. 25-cv-229-BWA, 2025 WL 592788 (E.D. La. Feb. 24, 2025) ("*Westley*"*).* Like here, the petitioner in *Westley* asked the Court to stay her removal while USCIS adjudicated her T-visa application because its failure to do so would, according to petitioner, permanently strip her of such relief should she be removed before final adjudication of said application and, thus, would be violative of her Fifth Amendment Due Process rights. *Id.,* at *2. In rejecting the petitioner's claims, the Court held that an order staying removal until the petitioner's T visa application is adjudicated falls outside the Court's jurisdiction under § 1252(g). *Id.* at *4. *See also Suarez-Reyes v. Williams,* No. CV-20-01222-PMX-MTL-(JFM), 2020 WL 3414781, at *2 (D. Ariz. June 22, 2020) (petitioner's claim that he will be deprived of an opportunity to have his T-visa applications heard at a meaningful time and manner if removed is insufficient to show his due process claim is not precluded by § 1252(g)); *Marcelo Rojas v. Moore,* No. 19-cv-20855, 2019 WL 3340630, at *1 (S.D. Fla. Mar. 26, 2019) (Court agreed that no T visa applicant has a constitutionally protected liberty interest in remaining in the United States); *Viera v. McAleenan,* No. 19-cv-05112-PHX-DWL-IZB, 2019 WL 4303417, at *4 (D. Ariz. Sept. 11,

2019) (petitioner alleges no facts to support contention that USCIS has a "clear nondiscretionary duty" to adjudicate a T-visa application before an applicant is removed).[3]

Courts within this district and elsewhere have also routinely held that Section 1252(g) bars jurisdiction to enter a stay of removal in other circumstances in which an individual seeks more time to apply for different forms of immigration relief. *See, e.g., Compere*, 368 F. Supp. 3d at 170 (D. Mass. 2019) (court barred from entering stay even though petitioner had application pending); *Viana*, 2018 WL 1587474, at *2 (D.N.H. Apr. 2, 2018); *E.L.F. v. Prim,* 986 F.3d 959, 964 (7th Cir. 2021) (petitioner's challenge to removal while she has a pending application for relief therefrom falls squarely in the path of § 1252(g)); *Garcia-Herrera v. Asher,* No. 13-35435, 585 Fed. App'x 439, 440 (9th Cir. Oct. 6, 2014) (finding that ICE's decision not to delay removal pending the adjudication of petitioner's DACA application constitutes a challenge to ICE's decision to execute a removal order and is barred from review under § 1252(g)).

Moreover, Petitioner has no right to a stay of removal under federal regulation, as the mere submission of an application seeking T nonimmigrant status has no effect on ICE's authority or discretion to execute a final order of removal. 8 C.F.R. § 214.204(b)(2)(i) ("The filing of an Application for T Nonimmigrant Status has no effect on DHS authority or discretion to execute a final order of removal…."). *See also Nicholas L. L. v. Barr,* No. 19-cv-02543-ECT-TNL, 2019 WL 4929795, at *5–6 (D. Minn. Oct. 7, 2019) (an alien subject to a final order of removal, deportation, or exclusion may file an application for T-1 nonimmigrant status directly with USCIS. However, the filing of an application for T nonimmigrant status has no effect on DHS' authority or discretion to execute a final order of removal, although the alien may request an administrative

[3] Additionally, Respondents note that the regulations provide mechanisms to reenter the United States after removal. *See* 8 C.F.R. § 214.207(b).

stay of removal pursuant to 8 C.F.R. § 241.6(a)). A stay of removal is automatically granted *only* once USCIS determines that T-visa application is *bona fide.* 8 C.F.R. § 214.204(b)(2)(iii). Petitioner makes no claim that USCIS has made a *bona fide* determination of her T visa application and any contention that the mere filing of an application stays her removal runs directly contrary to the governing regulations. 8 C.F.R. § 241.204(b)(2).

A similar jurisdictional bar applies to claims premised upon ineffective assistance of counsel, to the extent Petitioners are making such a claim here. 8 U.S.C. § 1252(a)(5) states that "the sole and exclusive means for judicial review of an order of removal" is "a petition for review filed with an appropriate court of appeals." Section 1252(b)(9), for its part, strips federal courts of jurisdiction to decide legal and factual questions arising from an alien's removal in any other context, including on a petition for a writ of habeas corpus. 8 U.S.C. § 1259(b)(9). The First Circuit has found that claims of ineffective assistance of counsel during immigration proceedings "plainly arise from the removal process." *Gicharu v. Carr*, 983 F.3d 13, 17 (1st Cir. 2020); *see also Aguilar v. U.S. Immigr. & Customs Enf't*, 510 F.3d 1, 8 (1st Cir. 2007) (stating that a claim challenging counsel's effectiveness "possesses a direct link to, and is inextricably intertwined with," the removal process). As such, this Court lacks jurisdiction to consider any ineffective assistance of counsel claim, and Petitioners have failed to explain why this statutory process should not be followed in this case.

In sum, Congress did not provide authority for this Court to consider such a stay request and, in fact, specifically stripped district courts of the ability to interfere with ICE's execution of removal orders. As such, Petitioners' request for a stay of removal to be issued from this Court must be denied.

**B. Petitioners Cannot Seek A Stay Via A Writ Of Habeas Corpus.**

The relief sought by Petitioners—a stay of removal so they can remain in the United States while an application is pending—is relief that is unavailable in habeas. This is not a challenge to the legality of Petitioner's detention. "Habeas is at its core a remedy for unlawful executive detention." *Munaf v. Geren*, 553 U.S. 674, 693 (2008). The writ of habeas corpus and its protections are "strongest" when reviewing "the legality of Executive detention." *INS v. St. Cyr*, 533 U.S. 289, 301 (2001). Therefore, the traditional function of the writ is to seek one's release from unlawful detention. *Department of Homeland Security v. Thuraissigiam*, 140 S. Ct. 1959, 1969 (2020) (citing *Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973)). As the Supreme Court has held, relief other than "simple release" is not available in a habeas action. *See Thuraissigiam*, 140 S. Ct. at 1970–71 ("Claims so far outside the core of habeas may not be pursued through habeas.") (internal quotations and citations omitted).

Here, Petitioenrs do not seek simple release—presumably because they are not detained. Instead, Petitioners seek a full stop to removal. *See generally* Doc. 1 at p. 4 (asking Court to declare that "Petitioner's future detention or removal is unlawful" and "Issue a Writ of Habeas Corpus ordering Respondents not to detain or remove petitioner"). This is not the type of relief that the Supreme Court found to be subject to habeas review. *See Thuraissigiam*, 140 S. Ct. at 1970 (holding that the relief sought, which did not include release, fell "outside the scope of the common-law habeas writ"). In reversing the Ninth Circuit's decision, the Supreme Court concluded that habeas has been historically used to challenge confinement and detention. *Id.* at 1969–70. In *Thuraissigiam*, the petitioner did not seek "simple release," and if he had sought proper habeas relief, it would take the form of release "in the cabin of a plane bound for [the designated country]." *Id.* at 1970. Other circuits have followed this principle. *See*, *e.g.*, *Tazu*, 975

F.3d at 300 ("And Tazu's constitutional right to habeas likely guarantees him no more than the relief he hopes to avoid—release into 'the cabin of a plane bound for Bangladesh.'") (brackets omitted); *E.F.L.*, 986 F.3d at 965-66 (holding that a petitioner could not invoke an alleged Suspension violation when a petition does not contest the lawfulness of restraint or seek release from custody); *Rauda*, 55 F.4th at 780 (same as *E.F.L.*).

Simply put, Petitioners seek to remain in the United States to pursue other immigration benefits. The Supreme Court has taken a "narrow view of habeas relief in the immigration context, which supports [a] reluctance to extend habeas relief to aliens who are released from detention." *See Bacilio-Sabastian v. Barr*, 980 F.3d 480, 483 (5th Cir. 2020) (citing *Thuraissigiam*, 140 S. Ct. at 1963). Accordingly, this Court dismiss Petitioner's Petition on this ground also.

**C. This Court Also Lacks Jurisdiction To Consider Petitioners' Claim That Removal Would Violate Their Due Process Rights.**

Petitioners assert in their Emergency Ex Parte Temporary Restraining Order Suspending Removal Of A Female Applicant Of A T Visa that their removal would violate their due process rights. *See* Doc. 2 at p. 4. But again, despite this framing, this Court lacks jurisdiction to consider such a claim.

Section 1252(g) bars district court review of "any cause or claim" that arises from executing a removal order and this provision "applies to constitutional as well as statutory claims." *Candra v. Cronen*, 361 F. Supp. 3d 148, 156 (D. Mass. 2019); *see also Gomes v. Smith,* 381 F. Supp. 3d 120, 124 (D. Mass. 2019) (petitioner had "no Due Process right to remain in the United States while his administrative claims are adjudicated."); *Lopez Lopez*, 2020 WL 419598, at *4 (due process claim for failure to stay removal "does not change the jurisdiction stripping analysis under Section 1252(g)."); *Viana*, 2018 WL 1587474 at *3 ("the court disagrees that § 1252(g) does not extend to due process claims generally …. [t]he provision itself contains no such limitation").

This includes any claim that removal before USCIS adjudicates a T-visa application violates a petitioner's Due Process rights. *See Westley*, 2025 WL 592788, at *4 (E.D. La. Feb. 24, 2025); *Marcelo Rojas,* 2019 WL 3340630, at *1 (Court agreed that no T-visa applicant has a constitutionally protected liberty interest in remaining in the United States).

Similarly, the Due Process Clause does not protect a "benefit … if government officials may grant or deny it in their discretion." *Town of Castle Rock, Colo. v. Gonzales*, 545 U.S. 748, 756 (2005); *Kentucky Dep't of Corrections v. Thompson*, 490 U.S. 454, 462-63 (1989); *see also Olim v. Wakinekona*, 461 U.S. 238, 249 (1983). Other Circuit courts have held that "[a]n alien has no constitutionally protected right to discretionary relief or to be eligible for discretionary relief." *Yuen Jin v. Mukasey*, 538 F.3d 143, 157 (2d Cir. 2008) (quoting *Oguejiofor v. Attorney General of U.S.*, 277 F.3d 1305, 1309 (11th Cir. 2002) (emphasis omitted)); *see Smith v. Ashcroft*, 295 F.3d 425, 430 (4th Cir. 2002) (addressing former statutory immigration scheme). For the foregoing reasons, this Court lacks jurisdiction over Petitioners' claim that a due process violation will occur if the removal order is effectuated before USCIS adjudicates any T visa application or before an Immigration Court adjudicates any motion to reopen.[4]

**D. To The Extent Petitioners Challenge Their Current "Custody," Their Request For Relief Should Be Denied.**

To the extent Petitioners' final order of removal constitutes being in "custody" for purposes of habeas relief (as Petitioners assert in their Petition), or to the extent Petitioner Tais Nara De Oliveira Franca Quinupe challenges her GPS monitoring, it is not Respondents' actions that are

[4] As indicated above, ICE is not aware of any pending motion to reopen. Decl. ¶ 19.

keeping Petitioner Tais Nara De Oliveira Franca Quinupe and her daughter in detention[5]: it is Petitioner's own actions. Petitioner and her daughter were instructed to depart the United States on or before October 12, 2025. Decl. ¶ 17. Petitioners did not depart as instructed. Decl. ¶ 17.

Thus, to the extent Petitioners now raise an argument of prolonged detention under *Zadvydas v. Davis*, 533 U.S. 678 (2001), such an argument is unavailing. The Supreme Court in *Zadvydas* did not issue a blanket rule that any detention over six months was unconstitutional and that a court was therefore compelled to release an alien. Rather, it stated that after six months in custody and once the alien provides the court with evidence of "good reason to believe that there is no significant likelihood of removal in the foreseeable future, the Government must respond with evidence sufficient to rebut that showing." *Id.* at 701. Petitioners cannot make that showing here because there is nothing preventing them departing the United States. Indeed, Petitioners secured flight tickets and, it appears, intended to depart as planned. *See* Doc. 2, p. 2. Instead of departing the United States, however, Petitioners filed the instant Petition. To that end, even if Petitioners were detained physically in an ICE facility—which they are not—their detention still would not be foreclosed by *Zadvydas*.

Additionally, the Supreme Court has reaffirmed the right of the Executive Branch to place aliens who are subject to removal under supervision with restrictive conditions. *See Zadvydas*, 533 U.S. at 695. It reviewed the history of cases in this area and concluded:

> [W]e nowhere deny the right of Congress to remove aliens, to subject them to supervision when released from detention, or to incarcerate them where appropriate for violations of those conditions. *See* 8 U.S.C. § 1231(a)(3) (1994 ed., Supp. V) (granting authority to Attorney General to prescribe regulations governing supervision of aliens not removed within 90 days)….

---

[5] Respondents dispute that Petitioners are in custody or detention for purposes of habeas relief.

*Id.* This is because the liberty interest of an alien subject to a final order of removal is not fundamental. *See Demore v. Kim*, 538 U.S. 510, 521 (2003). The Alternatives to Detention programs adopted by ICE derive from Congress's grant of authority to ICE to require final order aliens who are released from ICE custody to "obey reasonable written restrictions on the alien's conduct or activities that [ICE] prescribes for the alien." 8 U.S.C. § 1231(D)(3)(D).

As recognized in the Southern District of Texas, "ISAP…was developed pursuant to this delegation of authority, which the Supreme Court has already recognized as being within constitutional bounds." *Ahmed v. Tate*, No. 4:19-CV-4889, 2020 WL 3402856, at *4 (S.D. Tex. Jun. 19, 2020). Courts across the country, including this district, have repeatedly found that placement of an alien with a final order of removal in ISAP does not violate procedural or substantive due process. *See e.g. Lopez Lopez*, 2020 WL 419598, at *4 (GPS tracking device placed on an alien who has been ordered removed does not state a claim for a violation of due process); *Alvarez v. Holder*, 454 F. App'x 769 (11th Cir. 2011); *Iruene v. Weber*, No. 3:12-CV-1864-0-BH, 2012 WL 5945079 (N.D. Tex. Aug. 1, 2012); *Zavala v. Prendes*, No. 3-10-CV-1601-K-BD, 2010 WL 4454055 (N.D. Tex. Oct. 5, 2010); *Diawara v. Sec'y of DHS*, No. AW-09-2512, 2010 WL 4225562, at *2 (D. Md. Oct. 25, 2010) (ISAP requirements including ankle bracelet do not violate alien's liberty interests). Petitioner Tai Nara De Oliveira Franca Quinupe's enrollment in the Alternatives to Detention Program comports with the Constitution for these same reasons.

**CONCLUSION**

For the reasons described above, Respondents respectfully request that the Petition be denied.

Respectfully submitted,

LEAH B. FOLEY
United States Attorney

By: */s/ Nicole M. O'Connor*
NICOLE M. O'CONNOR
Assistant United States Attorney
United States Attorney's Office
John Joseph Moakley U.S. Courthouse
1 Courthouse Way, Suite 9200
Boston, MA 02210
(617) 748-3112
nicole.o'connor@usdoj.gov

Date: October 21, 2025

**CERTIFICATE OF SERVICE**

I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to any non-registered participants via first class mail.

*/s/ Nicole M. O'Connor*
NICOLE M. O'CONNOR
Assistant U.S. Attorney

Dated: October 21, 2025